## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

ARLENE L. LOVELL                                                              PLAINTIFF


v.                                    NO. 1:16-cv-00044 PSH


CAROLYN W. COLVIN, Acting Commissioner                      DEFENDANT
of the Social Security Administration


### MEMORANDUM OPINION AND ORDER


Plaintiff Arlene L. Lovell ("Lovell") commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Lovell maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] It is Lovell's position that her residual functional capacity was not properly assessed. She maintains that a medical assessment of her ability to do work-related activities prepared by Dr. Havi Goyal, M.D., ("Goyal") and Anthony Kelly, P.A., ("Kelly") was erroneously discounted.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010). If a treating physician offers an opinion, it should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with the other substantial evidence. See Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006) (internal quotations omitted). The ALJ may discount the opinion if other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions. See Id.

A summary of the evidence relevant to Lovell's physical limitations reflects that in April of 2010, she was working as a certified nursing assistant when she injured her back. See Transcript at 44, 320. Over the course of the next three days, she began experiencing pain and stiffness in her back, buttocks, and legs. She sought medical attention for her injury, and Kelly observed the following: "[Lovell] has soft tissue tenderness at L4-5. [Deep tendon reflexes] are intact. She is neurovascularly intact distally. [She] has slight decrease in range of motion, and muscle spasm is evident. [She] was able to get up on the exam table. No labs or x-rays today. [She] is given a Toradol shot during the appointment 60mg. IM." See Transcript at 320. A lower back strain and muscle spasm were diagnosed. She was prescribed medication and withheld from work.

Goyal and Kelly subsequently saw Lovell on thirteen occasions over the course of the next three months. See Transcript at 349 (05/02/2010), 348 (05/05/2010), 347 (05/08/2010), 346 (05/15/2010), 345 (05/16/2010), 344 (05/19/2010), 343 (05/26/2010), 342 (06/01/2010), 341 (06/24/2010), 340 (07/06/2010), 339 (07/15/2010), 338 (07/16/2010), 337 (08/16/2010). The progress notes from the examinations reveal that Lovell continued to experience pain, but trigger point injections and medication help reduce the severity of her pain. A May 10, 2010, x-ray revealed the following: "The spine alignment is anatomic. There is mild dis[c] space narrowing at the L5-S1 level, as well as in the lower thoracic spine. The vertebral body heights are well maintained with small osteophytes noted. The adjacent bony and soft tissue structures are unremarkable." See Transcript at 319. No acute abnormalities were observed, but mild degenerative changes to her lumbar spine were observed. She continued to be diagnosed with lower back pain and muscle spasm. A December 23, 2010, MRI revealed a "broad-based" disc protrusion and "[m]ild facet arthropathy at L4-L5 and "diffuse" disc bulging at L3-L4 and T12-L1 that likely causes no more than mild stenosis. See Transcript at 279.

Beginning in June of 2011 and continuing through November of 2011, Goyal and Kelly saw Lovell again on ten occasions for her back pain. See Transcript at 336 (06/28/2011), 335 (07/18/2011), 334 (08/05/2011), 333 (08/15/2011), 332 (09/01/2011), 331 (09/16/2011), 330 (10/13/2011), 329 (10/27/2011), 328 (11/10/2011), 327 (11/23/2011). At the initial examination, Goyal and Kelly's findings and observations were as follows:

-3-

> … [Lovell] presents to clinic for a follow up for evaluation of a workers compensation injury. [She] has lower back pain with significant pain in her buttocks. [She] also has pain in her mid back and upper shoulders. [She] feels that her pain level is 6 out of 10 today. [Lovell] has been put under a great deal of strain with her lost car and financial pressure of this case. This has been causing major depression. Still awaiting to get approval of case from [worker's compensation].
>
> … Neck-soft tissue posterior at C5-C7. Pain with extension and flexion. Slight decreased [m]uscle strength [bilaterally]. [Lovell] has soft tissue tenderness L4-L5 [bilaterally]. Pain with straight leg [raises]. Muscle strength is 60% of normal. MRI shows multiple [herniated nucleus pulposus] lumber spine [t]rigger points [times ten].

See Transcript at 336. Goyal and Kelly diagnosed low back pain, insomnia, muscle spasm, neck pain, and depression. Medication was prescribed for Lovell's pain. The progress notes from Goyal and Kelley's subsequent examinations of Lovell were largely consistent in the following respect: Lovell continued to experience pain in her back and buttocks, and the only relief she obtained was through trigger point injections.

On May 2, 2012, Goyal and Kelly prepared a medical assessment of Lovell's ability to do work-related activities. See Transcript at 281-283. Goyal and Kelly represented, in part, that Lovell's impairments give rise to the following limitations: 1) she cannot lift any amount of weight frequently and can lift no more than five pounds occasionally; 2) she can walk for a total of one hour a day but can only walk for fifteen minutes without interruption; and 3) although she can sit for a total of eight hours a day, she can only sit for fifteen minutes without interruption. Goyal and Kelly represented that Lovell's impairments prevent her from, in part, climbing, stooping, and pushing/pulling.

-4-

On April 21, 2013, Dr. Jonathan Schwartz, M.D., ("Schwartz") saw Lovell for a consultative physical evaluation. <u>See</u> Transcript at 285-289. He noted her complaints of low back and joint pain and listed her medications as "Hydrocodone, Ibuprofen, Gabapentin, and Carisoprodol." <u>See</u> Transcript at 286. With respect to her activities of daily living, he observed the following:

> [Lovell] is able to dress herself but will sometimes get help with her socks. She is able to do her own hygiene but will sometimes get help with her hair. She does "very little" cooking and dishes. She does not do any vacuuming, mopping, or yard work. She goes shopping. She has a driver's license but does not drive due to leg spasms. She denies any hobbies.

<u>See</u> Transcript at 286. Schwartz examined Lovell and observed, in part, that she was able to walk without assistance or difficulty and could sit comfortably. She was unable, though, to lie on the examination table because of her back pain, and it prevented him from assessing her range of motion in her hips and knee. He observed that she had a decreased range of motion in the lumbar portion of her spine, right knee swelling, and crepitus in her knees bilaterally. He diagnosed low back pain likely secondary to degenerative disc disease, and he could not rule out radiculopathy. He also diagnosed joint pain likely secondary to tendonitis and degenerative joint disease. Schwartz opined that Lovell was capable of lifting and carrying up to fifty pounds occasionally and twenty-five pounds frequently, standing and walking for up to six hours in a day, and sitting for up to six hours in a day. Although he was unable to assess all postural limitations, he opined that she could only occasionally stoop.

On April 29, 2013, Dr. Keith Whitten, M.D., ("Whitten") saw Lovell for a consultative psychiatric evaluation. See Transcript at 285-289. He observed, in part, that she appeared to be in pain, frequently shifting and changing positions. When she sat, she pressed down on the arm of her chair. With respect to her activities of daily living, he observed the following:

> Currently, [Lovell] lives in a house with her boyfriend. She has been there for three years. She is able to bathe and dress herself but needs help with her shoes. Sometimes it is hard to get on her underwear. Her boyfriend does most of the housework. Her daughter helps out. She cannot bend past her knees. She cannot go camping anymore. She has to take a nap in the afternoon. She lead a dull, boring life. She prepares meals with the microwave. She walks around the yard for exercise. She likes to be outside or she gets depressed. No Facebook, no computer.

See Transcript at 293. Whitten examined Lovell and observed, in part, that her gait was slow, and she moved painfully. His diagnoses included a pain disorder, and he opined, in part, that her chronic pain and physical limitations contribute to some anxiety and depression.

On July 24, 2013, Dr. Harpreet Johl, M.D., ("Johl") saw Lovell for her complaints of continued back pain. See Transcript at 300. He examined her and found, in part, the following:

> … BACK: examination of the LS spine, there is no swelling, no bruising, no broken skin. Forward bending test no scoliosis is seen. There is no tenderness on palpation of the lumbosacral spine. No sacroiliac joint tenderness noted. Straight leg raising test is negative bilaterally. EXTREMITIES: no pedal edema. Gait is within normal limits.

See Transcript at 300. His diagnoses included chronic low back pain, but he prescribed no medication.

On March 10, 2015, or sixteen days before the ALJ's decision denying Lovell's applications for disability insurance benefits and supplemental security income payments, Lovell was seen by Dr. Robert Baker, M.D., ("Baker") for a new patient consultation. See Transcript at 358-361.[2] Baker recorded Lovell's complaints of pain and noted that she characterized her low back pain as an "aching, throbbing, stabbing, cramping, and tingling" pain that "radiates to bilateral lower extremities." See Transcript at 358. She denied muscle cramps, loss of muscle bulk, joint swelling, arthritis, limitation of joint movement, muscle pain, or tenderness, but did report "leg weakness and gait unsteadiness." See Transcript at 359. Baker examined Lovell and made, in part, the following observations:

> Joints-Hips/SI Joint: Palpation of bilateral sacroiliac joints reproduced pain.
>
> Musculoskeletal: Gait and station antalgic. Normal lumbar lordosis and normal thoracic kyphosis. No [scoliosis] or abnormal thoracic kyphosis is noted. Palpation of lumbar facet joints at L3-4, L4-5, and L5-S1 level reproduced lower back pain. Hyperextension at lumbar spine reproduced lower back pain. Stooping 20-30 degrees relief pain. Bilateral facets loading maneuver by lateral flexion/bending reproduced pain. Bilateral lateral rotation also cause pain. Bilateral straight leg raise test positive.

---

[2]

Baker's notes from his new patient consultation with Lovell were not presented to the ALJ for his consideration. Baker's notes, though, were subsequently made a part of the record and considered by the Appeals Council when it considered Lovell's request for review. See Transcript at 4.

<u>See</u> Transcript at 359. Baker diagnosed lumbago, chronic pain syndrome, sciatica, lumbosacral spondylosis without myelopathy, lumbar stenosis, and degenerative thoracic/thoracolumbar intervertebral disc. He advised Lovell to maintain her normal activites but advised against bed rest. Because she had "failed conservative treatment," <u>see</u> Transcript at 360, he largely recommended steroid injections.

Baker saw Lovell for pain management on at least two other occasions. <u>See</u> Transcript at 363-365 (04/16/2015), 366-368 (05/12/2015). The progress notes from the examinations are unremarkable and simply reflect that she was treated for her pain.

Lovell's medical records were reviewed by state agency medical professionals. <u>See</u> Transcript at 87-98, 113-124. In short, the professionals opined that she was capable of performing light, unskilled work.

Lovell and her boyfriend completed a series of documents in connection with her applications. <u>See</u> Transcript at 228-236, 237-248, 249-257. In the documents, she represented that she was born on November 2, 1962, and became disabled and unable to work on June 23, 2012. <u>See</u> Transcript at 87. She represented that her postural limitations include difficulty lifting, standing, walking, and sitting. Lovell and her boyfriend represented that she has difficulty attending to her personal care, preparing meals, and doing more than minimal work around the house. She described a typical day as involving the following: "I get up very stiff and hurting from shoulders to feet. I have a cup of coffee and watch morning news. I take a shower and get dressed [and] take my pain pill. [Then, I] sit down." <u>See</u> Transcript at 250.

The record contains a summary of Lovell's FICA earnings. <u>See</u> Transcript at 206. The summary reflects that she has a good work history, having had regular and consistent earnings from a number of years.

Lovell testified during the administrative hearing. <u>See</u> Transcript at 44-60. She has not worked since the April of 2010 accident in which she injured her back. Her pain prevents her from driving an automobile and prevents her from walking more than two city blocks at one time. She stays at home most of the day and requires assistance in attending to her personal care. Lovell can perform some household chores, but her daughter helps with the bulk of the chores. Medication and injections help relieve her pain, but the pain soon returns. Changing positions also helps relieve her pain, but she cannot stand, walk, or sit for any substantial length of time. She has difficulty lifting and cannot lift more than approximately five pounds at one time.

The ALJ found at step two of the sequential evaluation process that Lovell's severe impairments include degenerative disc disease, a pain disorder, and crepitus in her knees. The ALJ assessed Lovell's residual functional capacity and found that she can perform sedentary work, although she has the following additional limitations caused by her physical impairments:

> … [Lovell] can lift and carry up to 10 pounds occasionally, sit for six hours in an eight-hour workday, stand and/or walk two hours in an eight-hour workday and occasionally stoop, crouch, bend, kneel, crawl, and balance. … In addition, [she] possess the skills identified by the vocational expert obtained from her past relevant work as a head cook.

See Transcript at 19. In making the assessment, the ALJ observed the following with respect to the severity of Lovell's pain:

> [Lovell] has not received the type of treatment one typically associates with a completely disabled individual. She has not required any repeated hospitalizations of an extended duration or surgeries. Neither has she needed frequent ER visits due to exacerbations. X-rays and MRIs showed no acute findings. [She] testified that she had not had any surgeries since she was a child. Dr. Schwartz opined [Lovell] could perform less than medium work. July 2013 notes show [Lovell] had a normal back exam and that her gait was within normal limits. [She] does not require an assistive device to ambulate. … In addition, [she] and her boyfriend have described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. …

See Transcript at 23. The ALJ assigned some weight to the opinions of Whitten, Schwartz, and the state agency medical professionals but assigned little weight to the opinions offered by Goyal and Kelly. The ALJ assigned little weight to Goyal and Kelly's opinions because their opinions were "inconsistent with the record as a whole" for the following reasons:

> … First, Mr. Kelly is not an acceptable medical source for Social Security purposes. There are no examination findings such as range of motion or straight-leg-raise testing to accompany the completed form. The lack of ongoing medical treatment also suggests that [Lovell's] back pain was not as severe as Mr. Kelly and Dr. Goyal indicated. A more recent consultative physical exam showed [Lovell] could perform less than medium work. Finally, July 2013 notes from [her] most recent office visit show that she reported her back pain did not radiate. A back exam was normal and a straight-leg raise test was negative. There was no pedal edema and her gait was within normal limits. …

-10-

<u>See</u> Transcript at 24. The ALJ found at step four that Lovell cannot return to her past relevant work but found at step five that there is other work she can perform.

Lovell challenges the ALJ's treatment of the opinions offered by Goyal and Kelly, the former being a treating physician. The ALJ's decision to accord little weight to Goyal's opinions is not something the Court takes lightly. A treating physician like Goyal is "usually more familiar with a claimant's medical condition than are other physicians …" <u>See</u> <u>Thomas v. Sullivan</u>, 928 F.2d 255, 259 n.3 (8th Cir. 1991) [internal quotation omitted]. On the record now before the Court, it cannot be said that substantial evidence on the record as a whole supports the weight given Goyal and Kelly's opinions. The Court so finds for the following reasons.

First, the ALJ discounted Goyal and Kelly's opinions because Kelly is not an "acceptable medical source." Kelly is a physician's assistant and, as such, is not an "acceptable medical source." As Lovell correctly points out, though, the opinions were made by both Goyal and Kelly, the former clearly being an "acceptable medical source." The opinions may therefore be properly deemed to be fully Goyal's opinions.

Second, the ALJ discounted Goyal and Kelly's opinions because there were no "examination findings such as range of motion or straight-leg-raise testing to accompany the completed form." Their opinions, though, were based upon the results of an MRI and the findings and observations they made during their approximately twenty-three examinations of Lovell between April 30, 2010, and November 23, 2011, examinations that included straight-leg-raise testing.

Third, the ALJ discounted Goyal and Kelly's opinions because a lack of ongoing medical treatment suggests that Lovell's back pain is not as severe as Goyal and Kelly believe. Without question, there are gaps in the treatment record. The gaps do not necessarily undermine Goyal and Kelly's opinions, though, as Goyal and Kelly were offering their opinions based upon their own testing and examination of Lovell, not on the basis of other physician's findings or the record as a whole.

Fourth, the ALJ discounted Goyal and Kelly's opinions because the opinions were inconsistent with the opinions offered by Schwartz, a consulting physician. Clearly, the ALJ can give greater weight to the opinions of a consulting physician than the opinions of a treating physician. See Anderson v. Barnhart, 344 F.3d 809 (8th Cir.2003). The consulting physician's opinions, like the treating physician's opinions, must be well-supported by medically acceptable clinical and laboratory diagnostic techniques. It appears that Schwartz did no new testing but simply relied upon much of the same testing relied upon by Goyal and Kelly. Schwartz simply reached a different conclusion than Goyal and Kelly. The record does not contain an adequate explanation for why Schwartz's opinions were credited, and Goyal and Kelly's opinions discounted, when they all relied upon much of the same testing.

The consulting physician's opinions must also not be inconsistent with other substantial evidence. The Court has some concern about the consistency of Schwartz's opinions with the other substantial evidence. For instance, he opined that Lovell is capable of lifting and carrying up to fifty pounds occasionally and twenty-five pounds

frequently and standing and walking for up to six hours in a day. There is no support in the record for such opinions. It is true that the sitting limitations offered by Schwartz is largely consistent with the findings and observations made by Johl, but the limitation is largely inconsistent with the findings made by Baker.

Fifth, the ALJ discounted Goyal and Kelly's opinions because the opinions were inconsistent with the findings and observations made by Johl, who found Lovell to have a normal back and negative straight-leg-raises. Johl, though, performed no testing, and the Court has some concern about the consistency of his findings and observations with the other substantial evidence. For instance, his opinions are inconsistent with the findings and observations made by Baker.

The opinion evidence in this case is varied and paints substantially different pictures of Lovell's ability to perform work-related activities. Although it is the ALJ's responsibility to resolve conflicts among the various opinions, see Bentley v. Shalala, 52 F.3d 784 (8th Cir. 1995), the Court would benefit from the ALJ re-evaluating the various opinions. This need is particularly great because the ALJ never had an opportunity to consider Baker's findings and observations.

It is for the foregoing reasons that substantial evidence on the record as a whole does not support the ALJ's assessment of Lovell's residual functional capacity. A remand is therefore necessary. Upon remand, the ALJ shall solicit Baker's opinions of Lovell's work-related abilities, shall re-evaluate all of the competing opinions, and re-assess Lovell's residual functional capacity.

The Commissioner's decision is reversed, and this case is remanded. The remand in this case is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and <u>Melkonyan v. Sullivan</u>, 501 U.S. 89 (1991). Judgment will be entered for Lovell.

IT IS SO ORDERED this 26th day of January, 2017.


_____
        UNITED STATES MAGISTRATE JUDGE